JOHN MCKEOWN AND PEGGY MCKEOWN *v.* HENRY CALUSA AND
C & K TRANSPORT, INC.

[No. 3-974A164. Filed January 27, 1977. Rehearing denied
March 7, 1977. Transfer denied June 29, 1977.]

*Alexander Lysohir, Thomas H. Singer, Lysohir and Singer,* of South Bend, for appellees.

*Edward N. Kalamaros, Edward N. Kalamaros & Associates,* of South Bend, for appellees.

GARRARD, J.—McKeown brought suit for injuries received in an automobile collision. The court granted judgment on the evidence, Indiana Rules of Procedure, Trial Rule 50, against McKeown upon his count charging wilful and wanton misconduct by Calusa, the driver of the other vehicle. The jury returned a verdict for the defendants upon the count asserting negligence.

On appeal McKeown asserts judgment on the evidence was improperly granted regarding his claim of wilful and wanton

misconduct, and that the court erred in refusing a requested instruction regarding wilful and wanton misconduct. Secondly, he assigns error in an instruction given by the court regarding the statute, IC 1971, 9-4-1-75(C), applicable to motor vehicle drivers making left-hand turns. We affirm.

The evidence disclosed that Calusa was driving a tractor trailer belonging to C & K Transport westbound on U.S. Highway 20, a four lane highway. As Calusa approached the intersection of Indiana Highway 149, the traffic light which controlled the intersection turned green for traffic on U.S. 20. Seconds later Calusa collided with an automobile driven by McKeown, which was attempting to turn left from eastbound U.S. 20 onto northbound Ind. 149. McKeown argues there was sufficient evidence to permit the jury to infer that Calusa observed McKeown's attempted turn in sufficient time to have avoided the collision. Thus, he asserts the jury should have been permitted to determine whether Calusa's conduct was wilful or wanton so as to overcome the bar of any contributory negligence.

*I. Standard of Review*

Indiana cases dealing with judgment on the evidence are consistent in the results reached. However, the language employed in articulating the standard of reivew is somewhat confusing and apparently inconsistent.[1] *Compare, e.g.,* the Court

1. The confusion appears to stem, at least in part, from our devotion to famiilar forms of phraseology. The familiar phrase is "substantial evidence of probative value." These terms were analyzed in *Vonville* v. *Dexter* (1948), 118 Ind. App. 187, 207-8, 77 N.E.2d 759, 760:
"We did not refer to this evidence in our original opinion because we did not regard it as substantial evidence with probative value to support the burden which is on appellee in this case. By substantial evidence we mean such relevant evidence as a reasonable mind might accept as sufficient to support a conclusion. Consolidated Edison Company of New York v. National Labor Relations Board, 1938, 305 U.S. 197, 229, 230, 59 S.Ct. 206, 83 L.Ed. 126, 140; 9 Wigmore on Evidence, 3rd Ed., § 2494, p. 299. By probative value we mean evidence 'carrying the quality of proof and having fitness to induce conviction.' Carter v. Commonwealth, 1932, 245 Ky. 257, 53 S.W.2d 521, 522."
Yet if the evidence has probative value, use of the additional term "substantial" would appear to either connote weight or constitute a redundancy. Since the court may not weigh the evidence on a TR. 50 motion, the use of "substantial" is superfluous. For this author's prior

of Appeals and Supreme Court opinions in *Miller* v. *Griesel* (1973), Ind. App., 297 N.E.2d 463, *transferred* (1974), 261 Ind. 614, 308 N.E.2d 701, with those in *Mamula* v. *Ford Motor Co.* (1971), 150 Ind. App. 179, 275 N.E.2d 849; and *Vernon Fire & Cas. Ins. Co.* v. *Sharp* (1976), 264 Ind. 599, 349 N.E.2d 173.

What the cases clearly suggest, however, is that the court is not free to indulge in the fact finder's function of weighing the evidence and resolving credibility determinations to grant a judgment on the evidence. On the other hand, unless there is some evidence of *probative value* (i.e., carrying the quality of proof and having fitness to induce conviction) upon each element of the claim, the motion is properly granted.

Evidence, of course, is direct or circumstantial. There is normally little difficulty in determining whether direct evidence of probative value has been adduced upon an issue. The problem arises in the area of circumstantial evidence. If the ultimate fact in question exists as a reasonable inference from the circumstantial evidence, a TR. 50 motion should be denied. Conversely, if the circumstantial evidence fails to create a reasonable inference of the ultimate fact, but merely leaves the possibility of its existence open for surmise, conjecture or speculation, then there is no evidence of probative value as to that ultimate fact, and the motion may be granted. As Judge Buchanan stated in *Mamula,* the trick is to tell the difference, and the answer depends upon the facts and circumstances of a given case.

## II.  *Wilful and Wanton Misconduct*

The rule is well established that contributory negligence is no defense when injuries are wilfully inflicted. *Steinmetz* v.

use of the phrase, see *Burger* v. *National Brands, Inc.* (1976), 168 Ind. App. 289, 342 N.E.2d 870. For a similar analysis see *Mamula* v. *Ford Motor Co.* (1971), 150 Ind. App. 179, 275 N.E.2d 849.

*Kelly* (1880), 72 Ind. 442. Moreover, conduct evincing a lesser degree of culpability will also preclude the defense. Such conduct has been variously labeled "constructive wilfulness," "wanton" or even "reckless." *Parker* v. *Pennsylvania Co.* (1893), 134 Ind. 673, 34 N.E. 504; *Brannen* v. *Kokomo G. & J. G.R. Co.* (1888), 115 Ind. 115, 17 N.E. 202; *Palmer* v. *Chicago, St. L. & P. R. Co.* (1887), 112 Ind. 250, 14 N.E. 70. *See, also, Hoesel* v. *Cain* (1944), 222 Ind. 330, 53 N.E.2d 165; *Kizer* v. *Hazelett* (1943), 221 Ind. 575, 49 N.E.2d 543.

Constructive wilfulness may be found in the commission of an intentional act which is done with reckless disregard of *the natural and probable consequence* of injury to a known person under the circumstances *known to the actor* at the time.[2] *See, Brannen, supra,* and *Brooks* v. *Pittsburgh C.C. & St. L. Ry. Co.* (1902), 158 Ind. 62, 62 N.E. 694; *Conner* v. *Citizens St. R. Co.* (1896), 146 Ind. 430, 45 N.E. 662; *Pittsburgh C.C. & St. L. Ry. Co.* v. *Ferrell* (1906), 39 Ind. App. 515, 78 N.E. 988.

It may also occur, however, from an omission or failure to act. Under such circumstances liability may be predicated upon the actor's failure to alter or cease an action under his control when he has actual knowledge of the natural and probable consequence of injury and of his opportunity to avoid the risk. *See, Parker, supra; Palmer, supra; Cleveland C.C. & St. L. Ry. Co.* v. *Miller* (1898), 149 Ind. 490, 49 N.E. 445; *Lake Erie & W. R. Co.* v. *Bradford* (1896), 15 Ind. App. 655, 43 N.E. 882.

In modern tort law, claims of constructive wilfulness based

2. The primary opinions dwell upon the requirement of actual knowledge of the person's position and probable injury. The existence of the particular person must be known, rather than merely an awareness of a general class who might suffer injury. Some cases under the guest passenger statute imply a lesser requirement of actual knowledge. While this may result from the inferences attending the presence of an invited guest, it may represent some difference in the standard under the guest act. Compare the cases cited with *Clouse* v. *Peden* (1962), 243 Ind. 390, 186 N.E.2d 1.

upon a *failure* to act have been largely supplanted by the doctrine of last clear chance. Both concepts seek to avoid the legal consequences of a plaintiff's own negligence.

Judge Hoffman has summarized last clear chance as requiring:

"1) The defendant had actual knowledge of the plaintiff; 2) The defendant knew of the plaintiff's perilous position; 3) The defendant had physical control over the instrumentality and had the last opportunity through the exercise of reasonable care to avoid the injury; and 4) The plaintiff was oblivious to his own danger, notwithstanding his own contributory negligence." (citations omitted) *National City Lines, Inc.* v. *Hurst* (1969), 145 Ind. App. 278, 282, 250 N.E.2d 507, 510.

The final requirement is also satisfied where the plaintiff, although aware of his position, is unable to extricate himself from the peril. *See, Stallings* v. *Dick* (1965), 139 Ind. App. 118, 210 N.E.2d 82.

While it may be that in attempting to assess legal fault in these situations we are essentially viewing the same coin from different sides, the doctrines have employed different rationales which may lead to differing conclusions. *Compare,* Prosser, *Law of Torts* (4th Ed.) § 65, p. 426, and § 66, pp. 427-8; and *Krenzer* v. *Pittsburgh C.C. St. L. Ry. Co.* (1898), 151 Ind. 587, 52 N.E. 220.

Indiana has generally deemed last clear chance a doctrine of causation. It is said that when applicable the defendant's "final negligence" is to be considered the sole proximate cause of the injury. *See, Bates* v. *Broughton* (1972), 151 Ind. App. 139, 278 N.E.2d 316.

On the other hand, constructive wilfulness cases are concerned with establishing the subjective state of mind of the defendant, *i.e.*, that under the circumstances his omission to act evidenced not merely negligence but a willingness that the plaintiff be injured. The distinction between constructive wilfulness and mere negligence

depends upon the actor's state of mind. To focus upon the distinction the cases have utilized the so-called presumption of self-preservation. It is presumed that a person is capable of and will exercise normal ability to remove himself from a perilous position due to motives of self-preservation. *Terre Haute, etc. R.R. Co.* v. *Graham* (1874), 46 Ind. 239. A defendant has the benefit of this presumption in gauging his actions. Thus, in the absence of some knowledge on the part of the defendant that the plaintiff will not, or cannot, extricate himself, the necessary intent for constructive wilfulness is not established. *Palmer* v. *Chicago St. L. & P. R. Co.* (1887), 112 Ind. 250, 14 N.E. 70.

Thus, given the presence of the other necessary elements, a contributorily negligent plaintiff may recover from a defendant under last clear chance if *in fact* the plaintiff was oblivious to his own danger or was unable to extricate himself when the defendant had the "last" opportunity to avoid the injury. To recover for constructive wilfulness under similar circumstances, not only must the plaintiff have been unaware or unable to avoid the injury, but the evidence must establish defendant's knowledge of facts sufficient to reasonably imply that he *knew* the plaintiff would not extricate himself.

Turning to the case before us, there was no evidence that Calusa intentionally (wilfully) injured McKeown and judgment on the evidence was correct as to that allegation. With respect to the charge of wantonness (constructive wilfulness), McKeown points to evidence from which it might be inferred that Calusa increased, or at least maintained, his established rate of speed at a time when he was aware of McKeown's peril and could have applied his brakes effectively.

Without reciting in detail the evidence pointed to, we recognize that it might have been sufficient under the standard of appellate review to avoid a judgment on the evidence. However, we hold the error, if any, was rendered harmless by the jury's verdict.

The same conduct on the part of Calusa constituted the basis for both counts of the complaint. On the count charging negligence, the issue was submitted to the jury under proper instructions setting forth the doctrine of last clear chance. When the jury found for Calusa on the negligence claim despite the instruction on last clear chance, they *necessarily* precluded a finding for McKeown on the claim of constructive wilfulness. If they found Calusa not negligent in the first instance, he clearly was not guilty of the more culpable act based upon the same conduct. On the other hand, to find that McKeown's recovery was barred by contributory negligence, they necessarily would have had to find that Calusa did not have the last clear chance.

Thus, for the jury to have found for the plaintiff on the claim of wantonness, *i.e,* constructive wilfulness, they would have had to determine that Calusa was aware of McKeown's position of peril; that the natural and probable consequence of Calusa's operation of his truck was a collision with McKeown; that Calusa was aware of this at a time when he was in control of his truck and could have avoided the collision; and that Calusa was *aware* that McKeown was oblivious to his peril or was unable to extricate himself. Yet if the failure to find that Calusa had the last clear chance was made on the basis that Calusa had no actual knowledge of McKeown's presence; that he did not know of McKeown's perilous position; or that he did not have physical control over the truck sufficient to avoid the injury through an exercise of reasonable care, such determination would also preclude any finding of constructive wilfulness. Similarly, if the jury found that McKeown was neither oblivious to his peril nor unable to extricate himself, then Calusa could not be found to have known of McKeown's unawareness or other inability to save himself as required for constructive wilfulness. To be "knowable" a fact must exist.

Finally, McKeown complains of the following final instruction given by the court:

"I instruct you that there was in full force and effect at the time of the accident in question statutes or laws of the State of Indiana which provided, in part, as follows:

9-4-1-82 [47-2027] Turning left at intersection.—The driver of a vehicle within an intersection intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but said driver, having so yielded and having given a signal when and as required by this act may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield right-of way to the vehicle making the left turn.

9-4-1-75 [47-2020] Required position and method of turning at intersections.—The driver of a vehicle intending to turn at an intersection shall do so as follows:

Approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and after entering the intersection, the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered."

He argues that the reference in 9-4-1-75 to approaching for a left turn "in that portion of the right half of the roadway nearest the center line" is misleading and confusing to the jury since McKeown's manner of approaching the turn could not have been a contributing proximate cause of the collision.

We note that the instruction does no more than set out the statute. Other instructions advised the jury on the necessity of causation on the question of contributory negligence. Thus, while one may wonder why the instruction was given in this form, there is nothing to indicate that it confused or misled the jury or that a different verdict might have been reached had it not been given. Under such circumstances, McKeown has failed to establish reversible error. *Baker* v. *Mason* (1968), 253 Ind. 348, 242 N.E.2d 513; *Old Town Development Co.* v. *Langford* (1976), Ind. App. 349 N.E.2d 744.

Affirmed.

Hoffman, J., concurs; Staton, P.J., concurs and files separate opinion.

## CONCURRING OPINION

STATON, P.J.—I concur. The trial court's error in sustaining the motion for judgment on the evidence was harmless in light of the jury's verdict. The instruction appears to have been in the light of the evidence, a needless instruction, but it does not constitute reversible error. McKeown has not demonstrated how he was prejudiced by the giving of the instruction.

NOTE.—Reported at 359 N.E.2d 550.