Bobby G. WITHAM, Guardian of the Estate and Person of Eddie G. Witham, and Bobby G. Witham and Betty D. Witham, Individually Appellants (Plaintiffs),

v.

NORFOLK AND WESTERN RAILWAY COMPANY, Consolidated Rail Corporation, Andrew Dooley and R.D. Martin, Appellees (Defendants).

No. 41S04–9010–CV–678.

Supreme Court of Indiana.

Oct. 19, 1990.

Rehearing Denied Dec. 12, 1990.

Jerome Mirza, Jerome Mirza & Associates, Bloomington, Ill., Thomas E. Hamer, Anderson, for appellants.

Cynthia L. Wodock, White & Raub, Indianapolis, for appellees.

ON CIVIL PETITION TO TRANSFER

DICKSON, Justice.

In this action for personal injury resulting from a railroad crossing collision, the trial court granted the defendants' motion for summary judgment. The Court of Appeals affirmed, *Witham v. Norfolk and Western Ry. Co.* (1989), Ind.App., 535 N.E.2d 1197. We reverse.

On April 9, 1983, 23–year–old Eddie J. Witham was severely injured when the automobile he was driving was struck by a Conrail train at the U.S. Highway 36 railroad crossing owned and maintained by Norfolk and Western Railway (N & W) in Mt. Summit, Indiana. The trial court entered summary judgment upon express

findings that the proximate cause of the collision was Witham's unjustified and unexcused failure to comply with the statutory duties of motorists approaching railroad grade crossings, Ind.Code § 9–4–1–106, and that the defendants' conduct was not willful, wanton, or reckless.[1]

The statute provided:

Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty feet [50′] but not less than ten feet [10′] from the nearest track of such railroad and shall not proceed until he can do so safely, when:

a) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a train.

b) A crossing gate is lowered or when a human flagman gives or continues to give the signal of the approach or passage of a train.

c) A railroad train, as defined in this Act [9–14–1–1 to 9–4–1–136], approaching within approximately 1500 feet [1,500′] of a highway crossing emits a signal audible for such distance and such train, by reason of its speed or nearness to such crossing, is an immediate hazard.

d) An approaching train is plainly visible and is in hazardous proximity to such crossing.

The Court of Appeals majority opinion acknowledged that factual questions existed regarding whether Witham violated subparagraphs (c) or (d) of the statute, but held that there was no genuine issue of material fact, and the facts established that Witham violated subparagraph (a).

The grant of summary judgment is proper under Indiana Trial Rule 56 if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Any doubt as to the existence of a factual issue should be resolved against the moving party, construing the contents of all pleadings, papers, affidavits, and testimony, and reasonable inferences therefrom, in favor of the nonmovant. *Beckett v. Clinton Prairie School Corp.* (1987), Ind., 504 N.E.2d 552.

■ Proof of the violation of a safety regulation creates a rebuttable presumption of negligence. *Thornton v. Pender* (1978), 268 Ind. 540, 377 N.E.2d 613; *Davison v. Williams* (1968), 251 Ind. 448, 242 N.E.2d 101. However, the presumption may be rebutted by evidence that the person violating the statute "did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law." *Davison*, 251 Ind. at 457, 242 N.E.2d at 105. This standard has also been rephrased as "in spite of the exercise of reasonable care the violation nonetheless occurred." *Kurowsky v. Deutsch* (1989), Ind., 533 N.E.2d 1210, 1214. Witham contends that due to the notorious long-standing malfunctioning of the flashing lights, they did not constitute a signal device that "gives warning" and that any violation of this statute was excused or justified because his conduct was reasonably prudent under the circumstances.

■ A violation of Ind.Code § 9–4–1–106(a) is not established merely upon a showing that a driver disregarded an operating signal device, but it must be shown that such device was "clearly visible" and "gave warning." *Consolidated Rail Corp. v. Thomas* (1984), Ind.App., 463 N.E.2d 315, 322.

Among the facts favorable to Witham were the following as noted in the dissenting opinion of Judge Conover:

"Here, the crossing flashers had been malfunctioning for many years. They often flashed when no train was in the

---

1. This cause of action arose before the enactment of the Indiana Comparative Fault Act, Ind.Code § 34–4–33–1 to 14. Contributory negligence would be a complete bar to recovery in the absence of a defendant's willful, wanton, or reckless conduct. *Davis v. Stinson* (1987), Ind. App., 508 N.E.2d 65; *Parrett v. Lebamoff* (1980), Ind.App., 408 N.E.2d 1344; *McKeown v. Calusa* (1977), 172 Ind.App. 1, 359 N.E.2d 550, 553.

area. In fact, [Witham] saw the flashers malfunctioning the day before the accident. The railroad had been specially notified of their malfunctioning 24 hours before the collision. One witness testified [Witham's] exposure to the malfunctioning flashers modified his perception of their meaning and gave "him an indication that it was also likely that there was no train on this occasion." (Mortimer dep., pp. 34–35). Another witness testified the flashing lights "were inadequate to give adequate notice to an oncoming motorist of the approach of a train." (Baerwald dep., p. 117). Mortimer also testified [Witham] acted prudently and began to decelerate as he approached the crossing. (Mortimer dep., pp. 33–35).

*Witham*, 535 N.E.2d at 1205–1206. In addition, there was an eventual dispute as to whether a driver's view of an oncoming train was obstructed, whether the bell and whistle were rung and blown as required by statute, and whether Witham had brought his car to a complete stop before proceeding into the crossing.

█ Because any doubt as to the existence of a factual issue should be resolved against the moving party, we find that it was error to grant summary judgment upon a finding of contributory negligence. The facts clearly demonstrate genuine issues regarding whether the notoriously malfunctioning flashers "gave warning" so as to give rise to a possible statutory violation, and even if so, whether Witham acted as would a reasonable person under similar circumstances who desired to comply with the law.

█ Witham further contends that the trial court erred in finding that the defendants' conduct was "neither willful, wanton nor in reckless disregard for the safety of motorists, including Eddie G. Witham." Record p. 700. Even if his conduct is eventually found to have constituted contributory negligence as a proximate cause of his injuries, Witham contends that summary judgment was inappropriate because of a genuine issue regarding the defendants' willful, wanton, or reckless misconduct. We agree.

In *McKeown v. Calusa* (1977), 172 Ind. App. 1, 359 N.E.2d 550, such misconduct, described as "constructive willfulness," consisted of either: 1) an intentional act done with reckless disregard of the natural and probable consequence of injury to a known person under the circumstances known to the actor at the time; or 2) an omission or failure to act when the actor has actual knowledge of the natural and probable consequence of injury and his opportunity to avoid the risk. 172 Ind.App. at 5, 359 N.E.2d at 553–554. In *Conder v. Hull Lift Truck Inc.* (1980), Ind.App., 405 N.E.2d 538, 547, such misconduct was recognized as having two elements: 1) the defendant must have knowledge of an impending danger or consciousness of a course of misconduct calculated to result in probable injury; and 2) the actor's conduct must have exhibited an indifference to the consequences of his conduct.

Facts favorable to Witham indicated the historic tendency of the flashers at this intersection to frequently, for many years, signal a false warning. Indeed, evidence was presented that the N & W was notified of the signal malfunction by the New Castle Police Department approximately 24 hours before the accident, and the signal nevertheless was permitted to continue malfunctioning until the collision. Reasonable inferences of the defendants' actual or constructive knowledge of the probability of harm also result from evidence that the intersection is traversed by 3,643 vehicles and up to 11 trains per day. Because of the genuine issue of fact regarding the defendants' willful, wanton, or reckless misconduct, summary judgment was improper on this issue.

Transfer is granted. Summary judgment is reversed. This cause is remanded to the trial court for further proceedings.

SHEPARD, C.J., and DeBRULER, J., concur.

GIVAN and PIVARNIK, JJ., dissent without opinion.

 

This cause is before us on remand from the Supreme Court of the United States. On August 21, 1979, the defendant was convicted of four counts of robbery, class A felonies; one count of attempted robbery, a class A felony; and one count of felony murder. For the latter offense the jury recommended, and the trial court ordered, the death penalty. The convictions and death sentence were affirmed on direct appeal. *Daniels v. State* (1983), Ind., 453 N.E.2d 160. In a subsequent proceeding, *Daniels v. State* (1988), Ind., 528 N.E.2d 775, we affirmed the denial of appellant's petition for post-conviction relief, but the Supreme Court granted certiorari, *Daniels v. Indiana* (1989), —— U.S. ——, 109 S.Ct. 3182, 105 L.Ed.2d 691, and remanded to this Court for reconsideration in light of *South Carolina v. Gathers* (1989), 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876. Both *Gathers* and the present case involve whether a death sentence is impaired by penalty phase prosecutorial statements concerning personal characteristics of the victim.